UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

        Plaintiff,

vs.

        Case No. 04-CV-73733
        HON. GEORGE CARAM STEEH

INTERNATIONAL HOUSE OF PANCAKES,

        Defendant.

_____/

OPINION AND ORDER
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (#21)

Defendant International House of Pancakes ("IHOP") moves for summary judgment as to plaintiff Equal Employment Opportunity Commission's ("EEOC") claim that IHOP violated the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621, et seq., by refusing to hire Jinks Greiner, age 67, as a waitress. A hearing on IHOP's motion was held on December 21, 2005. For the reasons set forth below, IHOP's motion will be DENIED.

**I. Background**

EEOC filed a complaint on September 24, 2004 alleging IHOP engaged in unlawful age discrimination at its Bloomfield Hills, Michigan restaurant when, beginning on May 2, 2003, IHOP failed to hire Greiner, a waitress with 40 years of experience. The record indicates that IHOP Assistant Manager Melanie Brown initially told IHOP waitress Becky Ruiz that the Restaurant needed waitress help. Ruiz in turn told her friend Greiner about

the job opportunity. When Ruiz mentioned hiring Greiner to Brown, however, Brown allegedly responded "that old lady?" Ruiz further testified Brown said: "Like she's too old. We don't -- she said that lady. She's too old. We don't, we don't want her. She's too old. And I'm like you've got to be kidding me. She said I don't care." Ruiz immediately complained to IHOP Manager Dan White about Brown's comments, and according to Ruiz, White wanted to learn more about Greiner "because it didn't matter to him . . . about her age or anything like that."

Greiner turned in an employment application at the Restaurant in early May 2003. According to Greiner, Manager White told her the Restaurant was thinking of terminating a waitress, and if that happened, he would contact her the following Monday. According to Ruiz, after Greiner left, she overheard Assistant Manager Brown tell White that he should not hire Greiner because she is "too old." Brown admits Ruiz overheard "me and Dan talking." According to Greiner, Ruiz told her that Brown had told White: "You can't hire her, she's too old." Greiner was not called the Monday following her initial May interview. Ruiz continued asking White about the status of Greiner's job application, further testifying that "[White] was talking to me and he said that he had all these young people in there and he didn't know if [Greiner] would fit into the harmony and -- but then he said you know what, maybe it would be a good change to have somebody like [Greiner] here."

In early July 2003, Assistant Manager Brown called Greiner and scheduled a meeting at the Restaurant with White concerning Greiner's employment. Greiner testified Brown told her White had hired Greiner, adding "but then, again, he doesn't know what he is talking about half the time." Greiner appeared at the Restaurant 15 minutes early on the scheduled date. According to Greiner, White came out from the back of the Restaurant

and asked Greiner why she was there. Greiner told him that Brown had set up the appointment. Greiner testified White responded that "it was not a good day . . . and he was very busy. He was very abrupt or gruff, and said that if I insisted on an interview, he would, but otherwise, he would prefer to make it a different time. [Brown] should not have made that appointment." The appointment was rescheduled for July 11, 2003.

Greiner further testified at her deposition that, during her approximately 1 and 1/2-hour July 11, 2003 meeting with White, White was called away "several times" due to computer problems at the Restaurant. Greiner continued:

> I had completed my orientation, my W-2s. We had discussed everything that needed to be discussed, and then, since my employment date was pending on someone leaving, when he left the last time . . . I knew he would be back there for a while, and he knew I had a previous appointment, so everything was completed, so I informed the waitress that I would be leaving. I had a previous appointment known to Mr. White, and I would call him. I was told that would not be a good idea, to call on the weekend since they're pretty well busy, and no one would really have time to go into any depth of conversation with me.

Greiner June 17, 2005 Deposition Transcript, at 78-79. Greiner admitted receiving several documents from White at the meeting, including an Employee Handbook. Greiner also admitted that White had not told her the paperwork had been completed, and that she did not know whether they had discussed everything. IHOP proffers several forms signed by Greiner on July 11, 2003, including an "Employment Application New Hire Information," a "Memo of Understanding," a "Form W-4," a "Meal Deduction Agreement Form," an "Acknowledgement of Receipt" of "At-Will Employment," a "Tip Reporting Form," a "Form 8850," and an "Employment Eligibility Verification." Greiner testified that she told a waitress she would call the following Monday to get her schedule, and left the Restaurant.

Greiner testified that, when she called the Restaurant on Monday, White was rude

to her, "yelling that I had walked out in the middle of orientation, that I had messed up his whole day[.]" Greiner testified White told her to call Brown the next day, Tuesday, for a schedule. Greiner testified she called the next day as instructed, and was placed on hold by Brown for 15-20 minutes after Brown said "hold on hon'." Greiner hung up and called back, and was told that Brown had left the Restaurant to go to the bank. Greiner called back the next day, Wednesday, asked for White, and was again placed on hold. Greiner hung up again after waiting to talk to White.

    In contrast, White testified that he told Greiner before she left the July 11, 2003 meeting that "we were going to schedule her from ten until two p.m. on Tuesday, the next day and that same week Friday." Greiner denies discussing a schedule, a start date, or even a salary with White. Ruiz testified that she learned Greiner was scheduled to work that Tuesday at 10:00 a.m., and when Greiner failed to arrive for work, Ruiz repeatedly phoned Greiner, without success. Ruiz testified she saw Greiner's name on a work schedule, but without a specific time or date. IHOP proffers a completed schedule showing Greiner was scheduled to work that Tuesday at 10:00 a.m.. Greiner was terminated for "job abandonment" on July 15, 2003 for failing to show up for work.

## II. Argument

    In moving for summary judgment, IHOP argues that Greiner was hired on July 11, 2003 after meeting with Manager White, and was lawfully terminated only after she failed to report to work the following Tuesday. IHOP stresses that Greiner admitted at her deposition that her age discrimination claim is premised on IHOP's failure to hire her as opposed to a wrongful termination. IHOP maintains EEOC thus cannot prove a prima facie case of age discrimination because Greiner was in fact hired. IHOP continues that, even

4

assuming EEOC can prove a prima facie case, EEOC cannot show discriminatory pretext because Manager White testified as to his "honest belief" that Greiner knew she was scheduled to work that Tuesday at 10:00 a.m.. IHOP argues that Assistant Manager Brown's isolated comments are irrelevant because Manager White was the sole decision-maker. As to Ruiz' testimony that White told her that hiring Greiner might disrupt the workplace harmony, IHOP argues this testimony constitutes inadmissible hearsay. IHOP assets that statistical evidence proffered by the EEOC is consistent with age demographic hiring practices within the United States and Oakland County.

### III. Standard of Review

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must

come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## IV. ADEA

The ADEA provides that employers may not "fail or refuse to hire or . . . discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). An ADEA plaintiff may meet her evidentiary burden of proof by offering direct evidence of discriminatory motive, which if believed requires a conclusion that the plaintiff's age was "at least a motivating factor" in the employer's actions, or by offering indirect and circumstantial evidence of unlawful motive under the burden-shifting approach of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1993). Mitchell v. Vanderbilt University, 389 F.3d 177, 181 (6th Cir. 2004). Under the McDonnell Douglas approach, a prima facie case consists of proof that: (1) the plaintiff is a member of the protected class, that is, at least forty years of age; (2) she was subjected to an adverse employment action; (3) she was qualified for the position; and (4) she was treated differently than similarly situated employees outside the class. Id. at 181. An "adverse employment action" is a "materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct." Id. at 182 (quoting Kocis v. Multi-Care

Mgmt., Inc., 97 F.3d 876, 885 (6th Cir. 1996)). The plaintiff bears the burden of production and persuasion on all four of the elements, and if all four elements have been proven, then a presumption of age discrimination arises. McDonald v. Union Camp Corp., 898 F.2d 1155, 1160 (6th Cir.1990).

If the plaintiff succeeds in proving a prima facie case, then the burden of production shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for its conduct. McDonnell Douglas, 411 U.S. at 802; Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1082 (6th Cir. 1994); Wooden v. Board of Educ. of Jefferson County, 931 F.2d 376, 378 (6th Cir.1991). Should the defendant employer carry this burden of production, the plaintiff "must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." Manzer, 29 F.3d at 1083. The plaintiff can prove pretext by showing that the employer's proffered reasons have no basis in fact. Cooley v. Carmike Cinemas, Inc., 25 F.3d 1325, 1329-30 (6th Cir. 1994). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000). Ultimately, the plaintiff must be able to prove that her age was a "determining" or "motivating" factor behind the adverse action taken by the employer. Wells v. New Cherokee Corp., 58 F.3d 233, 235 (6th Cir. 1995) (quoting Phelps v. Yale Security, Inc., 986 F.2d 1020, 1023 (6th Cir.1993)); Mitchell, 389 F.3d at 181.

## V. Analysis

IHOP's initial argument that Greiner is alleging a failure to hire, as opposed to wrongful termination, elevates form over substance. There can be no reasonable dispute

that IHOP's act of terminating Greiner on July 15, 2003 for "job abandonment" constituted a material adverse change in Greiner's employment status as it existed after her July 11, 2003 meeting with Manager White, and thus an actionable "adverse employment action." Mitchell, 389 F.3d at 182. Whether couched in terms of a "failure or refusal to hire," or a "termination," either is actionable under the ADEA if motivated by age. 29 U.S.C. § 623 (a)(1). Any technical pleading violation may be cured by EEOC at this juncture by amending the complaint to conform to the proofs. See Fed R. Civ. P. 15(b). IHOP does not dispute that Greiner is a member of the protected class of those employees over age 40, or that Greiner was qualified for the waitress position. See Mitchell, 389 F.3d at 181-82. The question thus becomes whether EEOC has come forward with sufficient evidence to allow a reasonable jury to conclude that Greiner was treated differently because of her age, and that Greiner's age was at least a motivating factor behind the adverse action taken against her by IHOP. Amway Distributors, 323 F.3d at 390; Mitchell, 389 F.3d at 182; McDonald, 898 F.2d at 1160; Wells, 58 F.3d at 235.

IHOP's argument that Assistant Manager Brown's age-related comments are irrelevant because they were not made by IHOP decision-maker Manager Brown is not well taken. The Sixth Circuit has consistently held that a supervisor's statements may be imputed to her corporate employer even if the supervisor was not the ultimate decision-maker.

> . . . [Plaintiff] Wells points out that unlike the supervisor in McDonald, Sharp was involved in the decision to fire her. The testimony was convincing that Sharp and Merritt worked closely together and consulted with each other on personnel decisions. Sharp and Merritt themselves testified that they acted jointly. Sharp explained that "We were removing her for job performance," and Merritt stated that "We decided that ... she could not stay on the switchboard." Sharp, not Merritt, prepared and signed the termination report.

> Whatever the formal hierarchy of [employer] New Cherokee might be, plainly Sharp contributed significantly to the decision, so his motivations are relevant to the question whether Wells was fired because of her age.
>
> We do not believe that the McDonald rule was ever intended for so formalistic an application as New Cherokee proposes. If we applied the rule rigidly, employers could simply create a post for the manager in charge of firing employees and isolate that person so that he or she never met the unlucky employees. Supervisors with no official authority to discharge would effectively make firing decisions before informing this manager, who would then act on the decisions, and the employer would not be liable even if the supervisors admitted discrimination. Companies may not so easily insulate themselves from liability for discriminatory discharges. Instead, courts must consider as probative evidence any statements made by those individuals who are in fact meaningfully involved in the decision to terminate an employee.

Wells, 58 F.3d at 237-38 (emphasis omitted). This reasoning in Wells continues to be applied in the Sixth Circuit:

> In assessing the relevancy of a discriminatory remark, we look first at the identity of the speaker. An isolated discriminatory remark made by one with no managerial authority over the challenged personnel decisions is not considered indicative of age discrimination. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1161 (6th Cir.1990) ("[S]tatement by an intermediate level management official is not indicative of discrimination when the ultimate decision to discharge is made by an upper level official."). This court later explained, however, that the McDonald rule was never intended to apply formalistically, and that remarks by those who did not independently have the authority or did not directly exercise their authority to fire the plaintiff, but who nevertheless played a meaningful role in the decision to terminate the plaintiff, were relevant. See Wells, 58 F.3d at 237-38; see also Kelley v. Airborne Freight Corp., 140 F.3d 335, 347-48 (1st Cir.1998) (statement by head of human resources who "participated closely" in plaintiff's termination was admissible to show a discriminatory atmosphere); Abrams v. Lightolier Inc., 50 F.3d 1204, 1214 (3d Cir.1995) (age-related statements of corporate vice president who may have "played a role" in the decision to terminate the plaintiff were relevant and could "properly be used to build a circumstantial case of discrimination"). Similarly, the discriminatory remarks of those who may have influenced the decision not to reassign the plaintiff to other positions in the company may be relevant when the plaintiff challenges the motive behind that decision.

Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 354-55 (6th Cir. 1998) (citations

to record omitted).

Here, Assistant Manager Brown testified that she worked closely with Manager White in scheduling waitresses for work. Brown stated she could "do anything that [Manager White] could do, to tell you the truth," and that she and White "did the schedule, me and him together, by Mondays we would have it out." As an example of her authority over waitress schedules, Brown explained:

> The girls would come to me and say, hey, can you give me this day off and this person will work for me. And then I could initial it on the schedule and change something.

Brown Deposition Transcript, at 20. A reasonable juror could conclude that Brown was meaningfully involved in and contributed significantly to waitress scheduling decisions, and thus influenced IHOP's decision whether to schedule Greiner for work. Wells, 58 F.3d at 237-38; Ercegovich, 154 F.3d at 354-55. Greiner testified that White did *not* schedule her to begin work at their July 11, 2003 meeting, but instead told her to call Brown the next day to receive her schedule. Greiner further testified that when she called the Restaurant as instructed by White, Brown answered the phone and said "hold on hon'," then placed Greiner on hold for 15-20 minutes until Greiner hung up and called back again, only to be told that Brown had since left the Restaurant to go to the bank. Construing this and other evidence in the record in a light most favorable to EEOC and Greiner, including Greiner's testimony that Brown scheduled her initial meeting with White and stated that White "doesn't know what he is talking about half the time," reasonable jurors could conclude that Brown, either alone or in conjunction with White, decided *not* to tell Greiner that she was otherwise "scheduled" to work on Tuesday at 10:00 a.m., motivated by Brown's perception that Greiner was "too old" for the waitress position and/or White's perception that Greiner

might not "fit into the harmony" of the younger wait staff. Greiner's failure to report to work then could be used as a pretext for age discrimination in terminating Greiner's employment relationship. Under the totality of the circumstances, Brown's alleged age-biased comments may be used by EEOC as circumstantial evidence that IHOP was motivated by unlawful age-based animus when it terminated Greiner for "job abandonment." Mitchell, 389 F.3d at 181; Wells, 58 F.3d at 237-38; Ercegovich, 154 F.3d at 354-55.

From this same evidence, a reasonable jury could also conclude that IHOP's proffered reason for ending Greiner's employment relationship was a mere pretext for age discrimination. Construed in a light most favorable to EEOC and Greiner, a reasonable jury could find that there is no factual basis for concluding that Brown, White, or anyone else at IHOP ever told Greiner to report to work on Tuesday at 10:00 a.m.. Manzer, 29 F.3d at 1083; Cooley, 25 F.3d at 1329-30. IHOP's proffered schedule, and Ruiz's testimony regarding a schedule and her expectation that Greiner would arrive for work at the Restaurant on Tuesday, does not displace Greiner's testimony that she was never told to report for work. Neither do the myriad of documents Greiner signed on July 11, 2003 prove that Greiner was ever told a specific date to report for work at the Restaurant.

IHOP's argument that Brown's age-related marks are "isolated" is unconvincing in that Brown allegedly made the remarks immediately after inquiries were made about Greiner's possible employment at IHOP. Ruiz's testimony regarding White's expressed concerns of disrupting the "harmony" of the younger waitresses is not inadmissible hearsay as it is not being offered to prove the truth of the matter asserted, but to show Manager White's state of mind. See Jacklyn v. Schering-Plough Healthcare Products, 176 F.3d 921, 927 (6th Cir. 1999).

White's testimony that he held an "honest belief" that Greiner had been told to report to work on Tuesday at 10:00 a.m. is not dispositive. Whether an employer held an "honest belief" centers on "whether the employer made a reasonably informed and considered decision before taking an adverse employment action." Braithwaite v. Timken Co., 258 F.3d 488, 494 (6th Cir. 2001) (quoting Smith v. Chrysler, 155 F.3d 799, 807 (6th Cir. 1998)). IHOP has not come forward with evidence that White made a reasonable inquiry whether Greiner actually knew she was to report to work on Tuesday at 10:00 a.m.. Greiner has denied that White told her to report to work on Tuesday at 10:00 a.m.. At best, a genuine issue of fact remains whether White told Greiner to report to work on Tuesday, and thus, whether Brown had a reasonable basis to believe that Greiner had in fact "abandoned" her job. Jacklyn, 176 F.3d at 927. Even without considering EEOC's proffered statistical evidence, there remains sufficient evidence in this record on which a jury could find in favor of EEOC and Greiner. McLean, 224 F.3d at 800.

## VI. Conclusion

EEOC has met its burden of proving a prima facie claim of age discrimination, that is, that Greiner is a member of the protected class, that she was subjected to an adverse employment action by IHOP, that she was qualified for the waitress position, and that she was treated differently than employment applicants outside the class. Mitchell, 389 F.3d at 181; McDonald, 898 F.2d at 1160. EEOC has also come forward with evidence to rebut as pretext IHOP's proffered reasoning that Greiner was terminated for "job abandonment," that evidence being that Greiner was never told to report to work on Tuesday at 10:00 a.m.. Manzer, 29 F.3d at 1083; Cooley, 25 F.3d at 1329-30. Greiner's prima facie case, combined with evidence that IHOP's asserted justification is false, may permit a jury to

conclude that Greiner's age was a "determining" or "motivating" factor behind the adverse action taken by IHOP. <u>Reeves</u>, 530 U.S. at 148; <u>Wells</u>, 58 F.3d at 235. Accordingly,

    IHOP's motion for summary judgment is hereby DENIED. New final pre-trial order, final pre-trial conference, and trial dates will be scheduled under separate order.

    SO ORDERED.

                                            s/George Caram Steeh
                                            GEORGE CARAM STEEH
                                            UNITED STATES DISTRICT JUDGE

Dated: January 25, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on January 25, 2006, by electronic and/or ordinary mail.

                                            s/Josephine Chaffee
                                            Secretary/Deputy Clerk